## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ANGELA SHUMAKER, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>GALAXY CON, LLC,<br><br>      Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Angela Shumaker ("Plaintiff") brings this action on behalf of herself, and all others similarly situated against Galaxy Con, LLC ("Defendant" or "GalaxyCon"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

### NATURE OF THE ACTION

1. Defendant has been nickel and diming visitors of its GalaxyCon conventions on its website in violation of Virginia consumer protection laws. Whenever a consumer selects an admission ticket on the website www.galaxycon.com (the "Website"), she is quoted a fee-less price, only to be ambushed by mandatory fees ("Fees") at checkout after clicking through the various screens required to make a purchase. This cheap trick has enabled Defendant to swindle substantial sums of money from their customers.

2. Defendant waits until consumers have gone through the laborious process of selecting their tickets before disclosing the Fees. In all cases, the Fees are not disclosed in the initially advertised prices, misrepresenting to consumers the total price of the tickets they intend to purchase. As a result, consumers are blindsided by the additional Fees, requiring them to reevaluate or forgo their purchase plans or to begrudgingly expand their budgets.

3.      This type of drip-pricing has recently become the subject of a national ban on junk fees. The Federal Trade Commission ("FTC") passed the Rule on Unfair or Deceptive Fees, effective May 12, 2025, that "specifies that it is an unfair and deceptive practice for businesses to offer, display, or advertise any price of live-event tickets or short-term lodging without clearly, conspicuously and prominently disclosing the total price." 16 CFR Part 464.  The FTC explains that "[t]he Rule prohibits bait-and-switch pricing and other tactics used to hide total prices and mislead people about fees in the live-event ticketing and short-term lodging industries."[1]

4.      Similarly, the Virginia legislature has recently followed suit and banned junk fees. Specifically, "Virginia's Mandatory Fees or Surcharges Law" prohibits the "advertise[ment] or display [of] a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges." Va. Code Ann. § 59.1-608(A).

5.      As a result of Defendant's failure to take appropriate or remedial action with respect to the Classes, and affirmative misrepresentations of material fact, Defendant has caused Plaintiff and members of the Classes to (1) bear mandatory expenses and costs they otherwise should not have had to bear, (2) be misled as to the actual price of the product, and (3) be subjected to "bait and switch" pricing.  Plaintiff, individually and on behalf of all other ticket purchasers, seeks to enjoin Defendant's unlawful and unfair practices and seeks damages, restitution, reasonable attorneys' costs and fees.

6.      For the foregoing reasons, Plaintiff brings this action individually and on behalf of all others similarly situated based on Defendant's unlawful failure to display the Fee with the initially advertised purchase prices, seeking damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for violation of Virginia's Mandatory Fees or Surcharges Law, Va. Code Ann. § 59.1-608 and the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-196 *et seq*.

---

[1] *FTC Rule on Unfair or Deceptive Fees to Take Effect on May 12, 2025*, FEDERAL TRADE COMMISSION (May 5, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/05/ftc-rule-unfair-or-deceptive-fees-take-effect-may-12-2025.

## PARTIES

7.      Plaintiff Angela Shumaker is an individual consumer who, at all times material hereto, was a Virginia citizen residing in Mechanicsville, Virginia. In or around February 2026, Plaintiff Shumaker purchased two admission tickets to Defendant's GalaxyCon Richmond, held in Richmond, Virginia, on March 19-22, 2026, while located in Virginia, from Defendant's Website. The transaction flow process that Plaintiff Shumaker viewed on Defendant's Website was substantially similar as that depicted in Figures 1-10 of this Complaint.

8.      Defendant Galaxy Con, LLC is a Florida limited liability company, with its headquarters located at 5300 NW 12 Ave., Ste 2, Fort Lauderdale, Florida 33309. Defendant owns and operates comic book and anime conventions and experiences throughout the United States, including in Virginia.  Defendant sells tickets to its events through its Website, www.galaxycon.com. Admission to GalaxyCon events provides attendees numerous goods and services such as live events, entry to panels, celebrity meet-and-greets, comic creator workshops, tattoos artists, gaming, and interactive entertainment, as well as access to purchase physical merchandise like comics, collectibles, and memorabilia.

9.      Most recently in Virginia, Defendant hosted Animate! x Nightmare Weekend Richmond held on October 17-19, 2025, and GalaxyCon Richmond held on March 19-22, 2026. Defendant hosted both events at the Greater Richmond Convention Center, in Richmond Virginia.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

11.      This Court has personal jurisdiction over Defendant because Defendant is a Florida limited liability company and its headquarters is located in Florida.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant

resides in this District.

## FACTUAL ALLEGATIONS

### A.    Drip Pricing and Junk Fees

13.    For years, companies like Defendant have deceived their consumers through drip pricing strategies by advertising low prices, then adding hidden junk fees right before consumers check out.

14.    According to the Federal Trade Commission, "drip pricing" is "a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process."[2] Consumers are shown one price when they initially view a product and then as they check out are barraged with numerous, junk fees which significantly increase the total cost of a product.

15.    Widespread among ticketed events, research shows that consumers ambushed by hidden fees at checkout pay upward of twenty percent more than when the actual price was disclosed upfront.[3] It is estimated that junk fees cost Americans over $90 billion each year.[4]

16.    Research has shown that consumers spend more money on the same goods when they are not shown the total price up front.[5] Therefore, by omitting Junk Fees from the advertised cost of tickets, companies can reap significantly more profits from every customer who ultimately purchases these tickets with the added junk fees.

17.    Furthermore, the FTC has argued that consumers who wish to compare the true prices of goods incur additional search costs when the full price is not disclosed up front due to

---

[2] *Trade Regulation Rule on Unfair or Deceptive Fees*, FEDERAL REGISTER, https://www.federalregister.gov/documents/2025/01/10/2024-30293/trade-regulation-rule-on-unfair-or-deceptive-fees.

[3] *Buyer beware: Massive experiment shows why ticket sellers hit you with last-second fees*, UC BERKELEY HAAS NEWS (Feb. 9, 2021), https://newsroom.haas.berkeley.edu/research/buyer-beware-massive-experiment-shows-why-ticket-sellers-hit-you-with-hidden-fees-drip-pricing/.

[4] *Readout of White House State Legislators Convening on Junk Fees*, THE WHITE HOUSE (Apr. 24, 2024), https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2024/04/24/readout-of-white-house-state-legislators-convening-on-junk-fees/.

[5] *See supra* note 2.

the time it takes to click through multiple pages to find the true cost of a product.[6] These search costs cost a consumer time, effort, and money.

18.    By not properly disclosing a price with all fees included, "consumers are forced to incur higher total search and cognitive costs" or "make an incomplete, less informed decision that may result in a more costly [product]."[7]

19.    Drip pricing and junk fees rob consumers of a fair choice when they are selecting tickets and ultimately force them to pay a higher price or incur higher search costs than they otherwise would have.

20.    Therefore, the companies who do take part in this deceptive practice, including Defendant, have been rewarded significantly for misleading their customers.

**B.    Virginia's Mandatory Fees or Surcharges Law**

21.    On May 2, 2025, Virginia took aim at junk fees, enacting Senate Bill 1212, Virginia's Mandatory Fees or Surcharges Law. SB 1212, which became effective on July 1, 2025, is one of the first laws of its kind in the United States.

22.    Virginia's Mandatory Fees or Surcharges Law prohibits the "advertise[ment] or display [of] a price for goods or services without clearly and conspicuously[8] displaying the total price, which shall include all mandatory fees or surcharges." Va. Code Ann. § 59.1-608(A). "Mandatory fees or surcharges" includes any additional fee or surcharge that must be paid in order to purchase the good or service being advertised." Va. Code Ann. § 59.1-607. Mandatory fees or surcharges do not include "taxes or fees imposed on the consumer by a government or

---

[6] *Id*.

[7] Mary W. Sullivan, Economic Issues: Economic Analysis of Hotel Resort Fees, BUREAU OF ECONOMICS FED. TRADE COMM'N (Jan. 2017), at 16–17, https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf.

[8] "'Clear and conspicuous' or 'clearly and conspicuously' means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language. In the case of an audio disclosure, "clear and conspicuous" or "clearly and conspicuously" means in a volume and cadence sufficient to be readily audible and understandable. Va. Code Ann. § 59.1-607 (adopting definition from Va. Code Ann. § 59.1-207.45.).

government-approved entity or assessment fees of a government-created special district or program paid to the government or government-approved entity." *Id*.

23. Consumers injured by a violation of Virginia's Mandatory Fees or Surcharges Law are entitled to the same remedies as those afforded under the VCPA. Va. Code Ann. § 59.1-610, including statutory damages.

24. Many states and the federal government have joined Virginia and banned drip pricing practices by ticket sellers. Yet, as discussed below, Defendant has engaged in a sustained campaign of drip pricing, in clear violation of Virginia law.

**C.     Plaintiff Shumaker's Experience with Defendant's Junk Fees**

25. In or around February 2026, Plaintiff Shumaker purchased two "GalaxyCon Richmond Saturday Single Day Pass" tickets to Defendant's GalaxyCon convention held in Richmond, Virginia, on March 19-22, 2026.

26. Plaintiff made her purchase by browsing Defendant's Website, viewing the advertised prices thereon, and selecting to buy her ticket preference.

27. The initially advertised price for GalaxyCon Richmond Saturday Single Day Pass was $75 each, which Plaintiff Shumaker saw and selected for purchase.  When purchasing tickets, Plaintiff Shumaker relied on Defendant's advertised prices to decide whether to purchase them or not.

28. However, once Plaintiff Shumaker went to her shopping cart, the price of her selection significantly increased from that which was initially advertised on Defendant's Website. Only, at the checkout screen, for the first time, is Plaintiff shown the true price of her ticket, which now includes processing fees of $5.46 and organizers' fees of $2.25 added to her transaction per ticket.  The Fees were not included in the original price of the tickets advertised on Defendant's Website.

29. Thus, ultimately Plaintiff Shumaker paid the advertised price of the tickets she had selected, but also had to pay the mandatory Fees at checkout—despite the fact that

6

Defendant waited until the last moment to reveal that mandatory Fee, in violation of the Virginia's Mandatory Fees or Surcharges Law and other Virginia consumer protection statutes.

30.     At the time Plaintiff Shumaker made her purchases, she was not aware that Defendant's practices were unlawful.  Plaintiff was not browsing in search of legal violations.  Plaintiff was instead browsing because she sincerely intended to purchase tickets, and she did in fact did purchase Defendant's tickets.  Plaintiff would not have purchased the tickets or would have paid substantially less for the tickets, had the true price been disclosed upfront.

31.     The transaction flow process that Plaintiff Shumaker viewed, as well as all Class members, on Defendant's Website was substantially similar as that depicted in Figures 1-10 of this Complaint.

**D.     Defendant's Hidden Mandatory Junk Fees**

32.     When a consumer, like Plaintiff, visits Defendant's Website they are presented with a main screen allowing them to select "Tickets On Sale Now" or "Buy Tickets." *See* Figure 1.

*Figure 1*



33.     When a consumer selects to purchase tickets, they are presented with a page showing the available ticket options, displaying the advertised price for each. *See* Figure 2, Figure 3, and Figure 4.

*Figure 2*



*Figure 3*



*Figure 4*



34.     Defendant conspicuously advertises the price for each ticket option to consumers. *See* Figure 5, Figure 6, and Figure 7.

| *Figure 5* | *Figure 6* | *Figure 7* |
| :---: | :---: | :---: |
|  |  |  |

35.     Next, consumers purchase the ticket they desire by selecting the button next to each ticketing option displayed. For example, to purchase the "3 Day Pass" admission ticket, advertised as $150, consumers select "Buy $150" in order to checkout. *See* Figure 8.

*Figure 8*



36.     When consumers select to buy their ticket preference they are taken to a new page, where the cost increases from the initially advertised price. For example, the price of the "3 Day Pass" admission ticket option that was initially advertised by Defendant as $150 (*see* Figure 8, above), now costs $174.37. *See* Figure 9 and Figure 10. Only at this stage, for the first time, can consumers see the mandatory fees that Defendant charges. *Id.* These hidden fees are junk fees because a consumer is required to pay them in order to make their ticket purchase but have been hidden throughout the buying process.

*Figure 9*



*Figure 10*



37.     By the time Defendant discloses this Fee, consumers have already spent their time carefully reviewing and selecting the tickets they wish to purchase.  In doing so, users rely on Defendant's previously advertised prices.  Thus, Defendant's omission of the mandatory Fee until the end of the process is an unfair practice designed to string consumers along with the false impression of lower prices and prevent consumers from being able to make an accurate comparison between Defendant's prices and its competitors' prices.

38.     All these tactics are detrimental to consumers because the advertised total for Defendant's tickets are not the true total. Consumers may not be able to see or find the details of the charges, and thus do not know that they may be required to pay such additional fees. Had customers been presented with the full price up front, they would have been better able to compare GalaxyCon to other events charging their fees up front. By the time the consumer reaches the billing and checkout pages, they have already exhausted time and effort to find the best priced experience and therefore may accept this higher price rather than continuing to search

11

for another experience, especially while being pressured to checkout before Defendant's countdown timer expires.

39.     Defendant's failure to disclose its mandatory Fee on its Website until a customer reaches the checkout stage directly violates Virginia's Mandatory Fees or Surcharges Law. Defendant's Fee is neither a government-imposed fee nor a stand-alone fee for postage and shipping.  As such, Defendant is obligated to disclose this Fee along with the initial advertised price.  It is not enough for Defendant to do so once consumers reach their checkout carts.  But that is exactly what Defendant does.

40.     Complying with Virginia's consumer protection laws is straightforward: a company like Defendant must display and advertise a price of its goods or services that includes all mandatory Fees. Defendant could have easily configured its website to list ticket prices inclusive of all mandatory Fees. However, Defendant chose not to, precisely to take advantage of the fact that hiding the mandatory fees at the initial stages increases conversions from click-through browsing to ticket sales, even as it harms consumers, disadvantages compliant competitors, and is illegal.

**CLASS ALLEGATIONS**

41.     Plaintiff brings this action on her own behalf and on behalf of all persons similarly situated as a class action.

42.     Plaintiff seeks to represent a Class defined as:
> All citizens of Virginia who, while in the Commonwealth of Virginia and within the applicable statutory period, up to and including the date of final judgment in this action, purchased a ticket to a GalaxyCon event through the website operated by Defendant where all mandatory fees were not included in the initially displayed or advertised price of the ticket.

43.     Excluded from the Class are Defendant, its corporate parents, subsidiaries, franchisees and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded person or

12

entities, and the Court to which this action is assigned. Additionally, excluded is the Judge or Magistrate Judge presiding over this action, their staffs, and their families.

44.     Plaintiff reserves the right to amend or modify the Class description with greater specificity or further division into subclasses or limitation to particular issues based upon discovery or further investigation.

45.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the tens of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  The Class may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

46.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant's hidden amenity fee was a "mandatory fee or surcharge" under Virginia law; (b) whether the Class members were uniformly subjected to a hidden fee; (c) whether Defendant's conduct alleged above violated Va. Code Ann. § 59.1-608; (d) whether Defendant's conduct alleged above violated Va. Code Ann. § 59.1-196 *et seq.*; (e) whether Plaintiff and the Class are entitled to, and the amount of any, damages and/or restitution; and (f) whether Plaintiff and the Class are entitled to attorneys' fees and costs.

47.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to disclose the total cost of its tickets, including Defendant's amenity fees, throughout the online ticket purchase process.

48.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

49.     The Class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Violation of the VCPA, Va. Code Ann. § 59.1-196 *et seq*.**
**(On Behalf Of The Class)**

50.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

52.     Plaintiff and the members of the Class are "persons" within the meaning of Va. Code Ann. § 59.1-198.

53.     Defendant is a "supplier" as defined by Va. Code Ann. § 59.1-198 because it is engaged in the business of advertising, selling, and offering for sale goods or services, in the form of its admission passes to GalaxyCon events, to consumers in the Commonwealth of Virginia.

54.     Defendant's sale of tickets to its GalaxyCon conventions and experiences constitute a "consumer transaction" as defined by § 59.1-198, because it involves the advertisement and sale of goods or services for personal, family, or household purposes.

14

55.     The VCPA is remedial legislation intended to "promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197.

56.     Defendant engaged in deceptive, misleading, and unfair acts and practices in violation of Va. Code Ann. § 59.1-200, including but not limited to: (1) Advertising admission tickets on its websites with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised, in violation of § 59.1-200(A)(8); and (2) Using deception, false pretense, or misrepresentation in connection with a consumer transaction, in violation of § 59.1-200(A)(14).

57.     Defendant advertised ticket prices for its conventions and experiences that did not include all mandatory fees or surcharges. Defendant's online sales platforms displayed deceptively low prices while concealing mandatory Fees that was only revealed at the checkout screen, after consumers had committed substantial time and effort to the transaction.

58.     Defendant's omission of the mandatory Fees was material, as the total price of admission tickets was a primary factor in consumers' purchasing decisions.

59.     Defendant's sales process misleads consumers by presenting lower initial prices and hiding the true, higher cost of tickets until the end of the checkout process.

60.     Defendant's deceptive conduct had the tendency, capacity, and effect of misleading reasonable consumers and did in fact mislead Plaintiff and members of the Class.

61.     Plaintiff and the Class reasonably relied on Defendant's representations that the listed price was the full ticket price and were induced to purchase tickets and pay the hidden Fees as a result.

62.     Plaintiff and the Class suffered ascertainable losses as a result of Defendant's unlawful conduct, including but not limited to the amount of the undisclosed and unlawful Fees paid, the loss of the opportunity to make informed purchasing decisions, and the expenditure of additional time and cognitive effort caused by Defendant's deception.

63.     Pursuant to Va. Code Ann. § 59.1-204, Plaintiff and the Virginia Subclass seek the greater of their actual damages or statutory damages of $500 per violation (or $1,000 per willful violation), as well as reasonable attorneys' fees and costs.

64.     Plaintiff and the Class further seek equitable relief, including restitution and disgorgement of all unlawfully obtained monies, and such other relief as the Court deems just and proper.

**COUNT II**
**Violation of Virginia's Mandatory Fees or Surcharges Law, Va. Code Ann. § 59.1-608.**
**(On Behalf Of The Class)**

65.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

66.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

67.     Plaintiff and the members of the Class are "persons," and Defendant is a "supplier" engaged in "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198.

68.     Defendant advertises and sells tickets to its conventions and experiences to consumers for personal, family, and household use.

69.     Virginia's Mandatory Fees or Surcharges Law, Va. Code Ann. § 59.1-608(A), prohibits any supplier, in connection with a consumer transaction, from "advertising or displaying a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges."

70.     "Mandatory fees or surcharges" include any additional amount that must be paid in order to purchase the advertised good or service, and exclude only taxes or assessments imposed by a government or government approved entity. Va. Code Ann. § 59.1-607.

71.     Defendant violated § 59.1-608 by advertising and displaying ticket prices that did not include mandatory Fees that consumers were required to pay in order to complete a ticket purchase.

72. Defendant's Website displayed an advertised ticket price to consumers that appeared to be complete, yet Defendant added hidden Fees only at the checkout page—well after consumers had decided to buy based on the advertised price.

73. No portion of Defendant's hidden unlawful Fees were imposed by any government or government-approved entity. The Fees were created and retained by Defendant for its own benefit.

74. Defendant's failure to include mandatory Fees in its displayed prices rendered its price advertisements false, misleading, and deceptive, and deprived consumers of the ability to compare true prices or make informed purchasing decisions.

75. Defendant's unlawful omission was material and caused injury to Plaintiff and the Class, including: payment of unlawful, undisclosed fees, loss of the opportunity to make informed purchasing choices; and time and effort wasted navigating Defendant's misleading checkout process.

76. Pursuant to Va. Code Ann. § 59.1-610, a violation of § 59.1-608 constitutes a prohibited practice under the Virginia Consumer Protection Act and is subject to all enforcement provisions and remedies provided by Va. Code Ann. §§ 59.1-196 *et seq*.

77. As a direct and proximate result of Defendant's conduct, Plaintiff and Class suffered ascertainable losses and seek: Restitution and disgorgement of unlawfully obtained monies; the greater of actual damages or statutory damages of $500 per violation (or $1,000 per willful violation), under §§ 59.1-610 and 59.1-204; and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

    (a)    For an order certifying the Class and naming Plaintiff Shumaker as representative of the Class, and Plaintiff's Counsel as Class Counsel;

    (b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

    (c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable and monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper;

(h)     For an order awarding Plaintiff and the Classes their reasonable attorney's fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 1, 2026                          **BURSOR & FISHER, P.A**.

                                             */s/ Stephen A. Beck*
                                                Stephen A. Beck

                                             **BURSOR & FISHER, P.A.**
                                             Stephen A. Beck (Fla. Bar No. 1010183)
                                             701 Brickell Ave., Suite 2100
                                             Miami, FL 33131-2800
                                             Telephone: (305) 330-5512
                                             Facsimile: (305) 676-9006
                                             E-Mail: sbeck@bursor.com

                                             **BURSOR & FISHER, P.A.**
                                             Philip L. Fraietta*
                                             50 Main Street, Suite 475
                                             White Plains, NY 10606
                                             Telephone: (914) 874-0710
                                             Facsimile: (914) 206-3656
                                             E-mail: pfraietta@bursor.com

                                             *Attorneys for Plaintiff*

                                             **Pro Hac Vice application forthcoming*

18